Good morning. There is one case before the court this morning, Lavelle-Billups. We ordinarily do not use the time clock, but please understand that we are familiar with the facts of this case, and so please try to understand the facts of this case. We're trying to avoid being repetitive. It's a little hot here, so we hope you will expeditiously use your time because we don't want any of you all fainting. Justice Garcia. The only real issue I think before us is one of plain air, and you are the appellant on behalf of Mr. Billups, but we all know that plain air is the state's burden, and you may want to consider that in allocating your time between your primary presentation and your rebuttal. Having said that, I'd ask that on behalf of the appellant, defendant. So counsel, step up and introduce yourself, please, and your co-counsel. Absolutely. Good morning, Your Honors. May it please the court, my name is Jason Higginbotham, and with co-counsel Paul Osicki here, we represent the appellants, Lavelle-Billups, in this appeal. Now, Your Honors, as you are aware, in the wake of Washington, there is no question that the trial court committed clear error in this case. There's no dispute that the jury should have received a second-degree murder instruction. The only issue was whether that failure to give that instruction constituted harmless error, and we believe that it was not harmless error for one simple reason. The state cannot say that the outcome would not have been different had the jury been given the second-degree murder instruction. Now, the state argues that... Well, well, the answer to that question you just posed turns on the evidence, right? Yes, Your Honor. And the only way it would be different would be... A jury verdict would be different is if they decided that the circumstances in this case warrant a conviction of a second degree. That's correct. So we have to look at the evidence to determine where the unreasonable belief lies on the part of the defendant, given his testimony. And I have to say, I need a little input on your client's behalf regarding where that unreasonable belief exists or is supported by the evidence that actually was presented. Well, initially, Your Honor, I would bring this back to the holding in Lockett, which was reiterated in Washington, which is that once a self-defense instruction has been given, the second-degree murder instruction is a mandatory counterpart. Because the jury, once there is evidence that the defendant possessed a subjective belief of the need to defend himself, the jury can go either way. It can determine that that subjective belief was reasonable or unreasonable. And in this case... But why, you know, and in fact, why are we discussing subjective belief? Because, well, maybe this explains it, but the Supreme Court in Washington certainly began with a discussion of subjective belief. But then it transgressed into one of objective belief. And objective belief is based on the evidence. And the evidence must support an unreasonableness on the part of the defendant in acting the way he did, in acting out of the need to defend himself based on the threat posed by the person that was eventually killed. And so what... And in fact, I'm glad you're quoting... It is the judge's duty to determine if any evidence is presented that the defendant had a subjective belief. And we wrote this case, Phillips, based on the premise that there was no evidence of subjective belief. This is all objectiveness on the part of the defendant. He claims the facts were on one end, and the State claims the facts were on the other. And there is no claim by the defendant that, as the State argued in Washington, that he thought the other guy had a gun and therefore had to pull his own gun and shoot him. Or he misperceived a dark-colored whiskey bottle as a locket, that misperceived it as a gun, and then when... And aided by one of his friends, the defendant's friend, saying, watch out, he pulls his own gun and shoots the guy, thinking that the guy was pulling a gun. So if we're going to focus on subjective belief and we're going to decide that the evidence doesn't permit harmless error, where is the evidence of subjective belief? The evidence was conceded during the jury instruction conference by the State and also agreed upon by the judge and the defense. Hold on, because that's when Washington comes into play, because Washington, in the Supreme Court's decision, they talk about six factors that must be present to establish the affirmative defense of self-defense. And the sixth factor, or the fifth factor, I forget which, talks about an objective. There must be an objective, reasonable basis for the defendant's actions. So an objectiveness is based on the evidence. And so I'm simply asking you, where is the evidence that a subjective belief was at play, as opposed to an objective one? Well, you have the conflicting testimonies here. You have Dante talking about his brother having the gun the whole time. You have Lavelle saying that the gun was pulled by Thompson. And the mere existence of those conflicting testimonies puts the jury in a position where it can decide whether Billups actually possessed a subjective belief and whether that subjective belief of the need to defend himself was reasonable or unreasonable in light of the circumstances. But what evidence would support his subjective belief, as opposed to an objective belief, that the facts were as he claimed they were, as opposed to the facts being the way Dante claimed they were? Your Honor, I think the only evidence you need is the defendant getting up on the stand and saying, I believed I needed to defend myself. And that's what happens here. And what do you rely on for that proposition? Do you rely on what the Supreme Court said in Washington directly? Well, what I'm relying on in this case is the fact that based on the testimony of Billups and the testimony of the other witnesses, all the parties agreed that there was enough evidence to permit giving a self-defense instruction. So that was enough for them to say that. And because they gave that self-defense instruction, Washington holds that the jury should have gotten the second-degree instruction as well, and it should have been able to determine whether that subjective belief was reasonable or unreasonable. So let me understand your position. You're basically saying that under Washington, and to paraphrase Lockett, there is no conceivable basis to exclude a second-degree instruction once some evidence exists to support the giving of self-defense. I don't know if Washington addresses that, but I think that Washington does address the fact that if the trial judge determines that there is evidence, as the trial judge did in this case, that there is a subjective belief permitting giving a self-defense instruction, then the second-degree instruction is a mandatory counterpart. And, in fact, that's the characterization by the Supreme Court of the joining together of the two instructions. It's a mandatory requirement. That's correct. And yet they remanded the case back to us to ask – well, did they actually ask us to consider harmless error in their mandate? Not specifically, no. And did Washington actually find or provide any real guidance in terms of how to apply harmless error in the context of an instruction that should have been given that wasn't given and the clear error exists because it wasn't? Sure. Washington addresses harmless error from the viewpoint of whether it would have affected the outcome of the trial. In this case, or in Washington, rather, the court said that they were not able to say that the outcome would not have been affected. And I believe that that's the case here because – Well, Washington was a little different, though, because there the claim was by the defendant that someone else had a gun. That's true. That he fired in self-defense, in the true nature of self-defense. That's true. But I also believe that it's not our – it's not within our scope to determine the facts and make inferences as to which facts or which distinctions between the facts would have caused the jury to go one way or another. It's the jury's province, as the law concedes. And here's going back to the state's burden, a question I have for you, and that is has the state presented a case involving the failure to instruct on second degree when the jury is instructed on self-defense that has found harmless error based on the absence of the second-degree instruction? Did the state present you with a case that has applied harmless error in the context of this? Not that I've seen, Your Honor. And did the Supreme Court tell us, other than Washington not being a harmless error situation, did the Supreme Court say, well, here's a case where harmless error exists in this situation? I'm sorry? So the answer is no, but here's the real question. You're familiar with Anderson, as you are familiar with Billups, because Billups relied on Anderson. And what's the – You would not need to answer. You wouldn't mind. Yes. So let me ask you, can Anderson be read as a harmless error case where the evidence, where this test announced by Lockett that the judge's duty is to determine if evidence is presented that the defendant had a subjective belief, can Anderson be read as an example of harmless error because the evidence was, according to the authoring judge, diametrically opposed? It was objectively one way, according to the defendant, and objectively the other way, according to the state, and there was no middle ground where the defendant was claiming, but I thought the facts were different than they turned out to be. Can Anderson be read as a harmless error case? Respectfully, Your Honor, I believe that the Washington court pretty clearly stated that Anderson got it wrong, and that while it may not be completely overruled, I believe a lot of the propositions that were presented in Anderson are no longer applicable, especially not in this case. At the very least, the Supreme Court never said that Anderson was a harmless error case. That's correct. And it also spoke to the question of determining whether – the judge's role of determining whether a question as to the reasonableness of a subjective belief exists or not, and in this case made a very clear pronouncement that Lockett never meant for that inquiry to be looked into prior to making the judgment as to whether a secondary murder instruction should be given. Mr. Higginbotham, I recall your argument the last time. I was obviously part of the panel, and you did a very good job. Thank you. You've done a very good job here, and it's up to you whether you want to reserve the balance. Sure. I will reserve the balance. Did you have any additional argument? Because you stopped mid-sentence at a few points. I do. And I would just like to say very, very quickly, Your Honors, that we believe that the only way that the State could argue harmless error is to show conclusively that the outcome would not have been different. There are several reasons why that is not the case here. The most compelling is perhaps the fact that a self-defense instruction was given. It could have been different. Yes. The bottom line is that you're saying that the jury could have found the defendant guilty of second degree. That's the only way it could have been different. Correct. Because they rejected self-defense, and they found him guilty of first degree. That's correct. The only thing that could be different is if they were. And that's what the exchange I had with you was trying to dig up what the evidence you believe the jury would have relied on to find him guilty of second degree. And, you know, I have to say you really haven't come forward with actual trial evidence that you believe it is. But the Supreme Court may have addressed that when it said defendants don't have to argue unreasonableness of their own belief. That's correct. I believe that's the case, Your Honor. All right. Thank you for your time. I'll reserve the remaining time. Thank you, Counsel. Good morning, Your Honors. My name is Myles Kelleher on behalf of the people. You're going to have to speak up. It's a recording device, not a microphone. Okay. Your name is what? Myles Kelleher on behalf of the people. Counsel, do you accept that there's a burden of proof placed on you at this point on the plain error? And if so, what do you believe it is? The people have to at trial we had to prove beyond a reasonable doubt that the defendant didn't act in self-defense. And now in light of the Marvin Washington decision, we also have to demonstrate that it was harmless error that occurred here. And based on the evidence at trial, the instructional error was harmless. No rational trier of fact could have looked at these facts and found second-degree murder. Therefore, even if the jury had been properly instructed on second-degree murder, as Marvin Washington indicates they should have been, nevertheless, the result would not have been different. And we know that from the facts of the case. But wasn't that your position before the Supreme Court when you tried to declare Jeffries not pertinent to the issue before the court? And the court said rule to the contrary, that Jeffries was pertinent. And the court went so far as to say that the defendant in the context of a self-defense claim never has to argue the unreasonableness of his own action. And so to the extent that he never has to argue it, how do we go about establishing harmless error? Because the error seems to be that the jury should have been given that option and nobody has to argue second-degree. The jury simply has to be given that option. And because that's what the law requires. Right. The jury has to find a mitigating factor that's sufficient to reduce first-degree murder to second-degree murder. However, in this case, people's position is that there was no mitigating factor here. And the evidence here, the victim was found face down in an alley with his pants halfway down. So that's indicating that he stepped out of the van to urinate. He wasn't committing a robbery against Dante or the defendant. That's why his pants were halfway down. Now, the defendant takes... Where did you get, I mean, where is, this sounds like speculation. How did you... It's a reasonable inference from the evidence. There's no, it's circumstantial evidence that his pants were halfway down. However, it's consistent with Dante's testimony as to what transpired. And also you have the testimony of the medical examiner, Dr. Jones, who examines the body. She finds three bullet, she recovers three bullets from the body. Two of the entrance wounds were in the front of the body. One was directly in the back of the victim's head. Well, let's clear up what you're trying to prove here by your claim of harmless error. You're trying to prove that the evidence was overwhelmingly in favor of conviction of first degree. Is that correct? Yes. And by overwhelmingly, I thought the Supreme Court was saying in Washington is that whenever the defendant testifies, that overwhelmingly threshold is difficult to reach because the defendant is going to testify to the contrary. And in fact, that's what the Supreme Court mentioned in its decision in Washington, that there was conflicting testimony. And they also referenced diametrically opposed evidence or testimony. And that was based on the defendant testifying along with his witnesses, but we don't have to count up the number of witnesses on each side, do we? Well, these have to be assessed on a case-by-case basis. In Washington, the Supreme Court also held that the trial court's failure to instruct a jury on second degree murder was not subject to automatic reversal. So the Supreme Court clearly contemplated that there would be situations where the same error that occurred in this case could still be found harmless based on the particular facts of the case. And the facts here are significantly different than those in Washington. In Washington, you had a large street brawl. You had conflicting testimony as to whether one of the victims, Ronald Lee, had a gun. None of the state's witnesses saw Ronald Lee with a gun. However, the defendant in Washington testifies that Ronald Lee pulled out a gun and then the defendant got scared and used his own gun to shoot Ronald Lee. He also testifies that another person, Ronald Lee, was chasing him with a gun that appeared to be jammed. And then you had another defense witness. So what are you saying the rule should be that, you know, when more than one gun exists, the evidence cannot be found overwhelmingly overwhelming, but if there's only one gun that is recovered, then the evidence has been shown to have been fired, then the harmless error analysis can't apply? It's not simply the number of guns. You have to look at the totality of the circumstances. And ultimately... But in this case, how many witnesses testified for the prosecution regarding what actually happened? Dante, unlike Washington, there were only... So how many people testified on the other side as to what happened? Only the defendant. So it was one versus one, and they gave opposing testimony. How do we say that it's harmless? Because here you had... How do we say that it's overwhelming? How do we say it's overwhelming? Because... And not engage in reweighing the evidence. Right. Since Washington, none of the facts here have changed. The analysis has changed, but the outcome doesn't necessarily have to change. Here you have a situation where there is no middle ground, because this evidence, like Anderson, was diametrically opposed. So that would be the criteria. When the evidence is diametrically opposed, then there's no middle ground. Well, that precise language the Supreme Court used in Washington. Justice Garvin characterized the testimonies being diametrically opposed in Washington, so that's already been used in Washington, and harmless error has been rejected. So that can't be the test. In Washington, they still found that, based on the evidence, there was a possibility that the defendant may have had a mistaken belief in the need for self-defense. And that's because the circumstances there were different. There were conflicting testimony between even the defense witnesses in Washington. The defendant in Washington said that Ronald Lee had a gun, whereas Topeka, Washington, she testifies that Ronald Lee was trying to grab the defendant, but she never testifies that Ronald Lee had a gun. She testifies that she hears a gunshot, and then sees Donald Lee running with a gun that appeared to be jammed. So in Washington, you have conflicting evidence not only between the state and the defense case, but between the two defense witnesses, defendant and Topeka, as to whether Ronald Lee had a gun. So you also have testimony that there may have been one gun, two guns, maybe even three guns in Washington. In this case, it's undisputed that there's only one gun. The only question here is, who brought the gun to the scene? Well, is that a fair statement? Because it seems to me that the only evidence is that one gun was fired. And the defendant's testimony was that the only gun that came into play was the gun that the victim had, or the deceased had. And so the fact that one gun existed apparently didn't make any difference. Well, why should it make a difference in the context of a second-degree instruction? It makes a difference because here there was no evidence that the defendant had formed a mistaken belief, such as in Lockett, where there's no evidence here that both parties, neither party ever suggested that there was more than one gun here. Neither party suggested that the victim had some object that may have been mistaken as a gun. How many guns were in President Anderson, if you recall? I believe just one gun. Just one gun? Yeah. What did the statement say? In this case, the Supreme Court in Washington, it looked at Anderson, and just as in this case, it found that the jury should have been instructed on second-degree murder, but the Supreme Court in Washington never held that the evidence in Anderson could not be found harmless. But, you know, do we read significance into the absence of that, or should we read significance into the fact that the Supreme Court didn't say Anderson was a harmless error case? The Supreme Court never reached that analysis, so I'm not sure if we can read anything into it other than looking at the facts of Anderson, which are very similar to this case. Here, the Supreme Court clearly contemplated that there would be situations where this could be harmless. That's why they ruled that this type of error is not subject to automatic reversal. And if there's ever a case that warrants a finding of harmless error, it's this case before the court right now. This is a set of facts where all the evidence suggests that there was no mistaken belief here. There was no middle ground. When the defendant gets back into the van, he doesn't mention anything about a robbery to Dante, and Dante never testifies about a robbery. Dante says, what happened? The defendant says, drive. He wants to get out of there. He has consciousness of guilt. And then they go to the Koroma residence, and Dante says, well, what happened? And the defendant says, well, I think I may have shot someone. And Dante says, well, where did you get the gun? The defendant says, I had the gun the whole time. So that totally contradicts his later story that he concocts about this robbery. The victim never had a gun. There never was a robbery. He stepped out of the van to urinate, and the defendant takes advantage of the situation and shoots him. You have the testimony of the medical examiner. She finds that the first two shots wouldn't have been to the front of the body, wouldn't have been immediately incapacitating. What's the difference between the harmless error contention you're raising here and the analysis Justice Gordon engaged in in Anderson when he said, no second instruction had to be given because the evidence simply didn't support it? What's, you know, both are evidence-based, aren't they? So why? Yes. And just as the evidence didn't support a finding of second-degree murder in Anderson, it doesn't. Well, the Supreme Court never mentioned anything. What the Supreme Court made clear was that Anderson was wrongly decided, leaving. Marvin Washington indicated that, yes, in Anderson. The Supreme Court could have said we believe the analysis undertaken in Anderson was the incorrect analysis, but the outcome was right. The Supreme Court didn't say that. That's true, but it also didn't say the opposite. Well, it pretty much slammed Anderson. It pretty much said Anderson was wrong through and through. But at that part of the decision, it was simply addressing the question of whether an instruction on second-degree murder had to be given as a mandatory counterpart. And it used Anderson as an example, a case where it should have been given. If harmless error applies in this context because it's not, the Supreme Court has determined that it's not a structural error which would trigger automatic reversal, what's your strongest case that supports a finding of harmless error in this case? What's your strongest case? Is there a case that you want to present to us or did present to us? I'm not aware of any case dealing with this. However, I would submit that the case before the court is the strongest case. This is a case where this court, in its original opinion, found that there was no middle ground here and that the evidence would not have supported a verdict for second-degree murder. And Anderson, I'm sorry, Washington has changed the analysis, but nothing in Anderson, I'm sorry, Washington prohibits this court from finding harmless error here. All Washington says is that error occurred, there's no question, but it has to be assessed on a case-by-case basis just like any other harmless error, whether it's a jury instruction or some other type of harmless error. The ultimate question is would it have affected the outcome of the trial? And in this case, based on all the evidence, there is no evidence of the defendant having any subjective belief, reasonable or unreasonable. So since there's no evidence here that the defendant had an unreasonable belief in the need for self-defense, the outcome of the trial would not have been different, even if the jury had been properly instructed. And that's understandable. But here's the real hard hurdle to overcome from Washington, because Washington quotes, you know, it cites a variety of cases, I guess even preceding Lockett. The case I'm thinking of is People v. O'Neill, where the Washington quote addresses O'Neill and says that the O'Neill court further held that the error was not harmless, noting that the finding by the trial court is sufficient evidence in the record of the defendant's subjective belief in the necessity for the use of force to warrant a self-defense instruction foreclosed any finding that the evidence of murder was overwhelming. So, I mean, we could read that, that each time a judge, and it is the judge's decision, saying that the evidence in this case warrant the jury be instructed on self-defense, that O'Neill seems to say that whenever that finding is made, it forecloses. It forecloses a harmless error finding. Well, if Washington wanted to go that far, could have found that this type of error could never be harmless. Here's what I'm saying. Didn't it go that far? Didn't it go that far by quoting O'Neill for that very point? Isn't that what it's telling the lower courts, including this court, that O'Neill stands for that proposition? And if O'Neill stands for that proposition because they quoted it, and it's not even a quote, I'm sorry, it's a paraphrase. So it's their choice that the use of this foreclosing any finding that the evidence of murder was overwhelming, that's the Washington court's words. I believe the Supreme Court in Washington was discussing O'Neill. However, it wasn't holding that that was going to be the rule that Washington found. And the reason we can conclude that is because after its discussion of all these cases, it then moves on to whether or not this type of error could be found harmless. And it makes clear that this is not a structural error, and it's not subject to automatic reversal. So by holding that, the court is indicating that, yes, this is an error that could be found harmless based on the facts of the case. And then the Washington court looked at the facts in Washington, found that under those particular facts, it could not say that it wasn't harmless. So, again, the court was applying a case-by-case basis, looked at those facts. However, this court, these facts are very different. Let me ask you this. I still understand your posture that if a self-defense argument, I mean, an instruction is given, how do you get away from the fact that then a second-degree instruction should not be given? I mean, it seems the case law is pretty clear, right? Marvin Washington cleared up that issue and said that, yes, it should have been given. So we're not disputing error occurred here. The question is whether it was harmless. And based on these- The question is this from me, Mr. Kelleher. Between Anderson and, I keep forgetting this, Billups, between Anderson and Billups, the facts in each case, which do you think establishes an overwhelming showing of guilt? Anderson or Billups? For first-degree murder? For first-degree murder. Or are they the same? I believe both of them did. They're pretty much identical, aren't they? And especially in this case, there was overwhelming evidence of first-degree murder here. So to the extent that there's overwhelming evidence in this case, there's overwhelming evidence in Anderson as well. And my concern is that if the Supreme Court didn't tell us that, and yet it went ahead and analyzed the harmless error in the context of Washington, aren't we sort of undercutting the Supreme Court by saying- We would have to say that not only is it overwhelming evidence in this case, but it was overwhelming evidence in Anderson, too. And therefore, Anderson was rightly decided, though, under the wrong analysis. Isn't that what you're asking us to do? And isn't that a tough thing for us to do, given Washington and what it said? Well, we're asking you to affirm this conviction. Well, we can only affirm on Harris. Right, obviously. What would have happened in Anderson is kind of an academic question. How could it possibly be harmless if the jury could have convicted on second-degree instead of first-degree? I mean, you're saying that the evidence, and in light of Justice Garcia's questions, you would have to completely eliminate the defense's testimony and solely rely on what the state presented in order to get to your position of overwhelming. But if there's a possibility that the jury could have found second-degree, how could that be harmless in light of the differences, the variances in the sentencing between first-degree murder and second? Under these facts before this Court, there wasn't a possibility of second-degree murder, even though, yes, technically the jury should have been instructed on it. Still, the evidence here, the same facts here that establish that the defendant didn't act in self-defense also establish that the defendant didn't act with an unreasonable, subjective belief in the need for self-defense. There was no middle ground here, unlike the middle ground that could be found in Washington. So here, the evidence simply did not support any mistaken belief on the part of the defendant. And we have the third shot to the back of the victim's head. That's a shot that one could reasonably conclude based on... So you're saying that there's no middle ground, there's no possibility that a jury could have looked at these facts and said, well, you know, these people knew each other, you know, there had been an ongoing relationship, that he was taken by total surprise, you know, that Thompson would engage in this behavior. And in the midst of his shock that he shot that final bullet, you know, after having had his hoodie, after having been ambushed, after having had his hoodie pulled over his head, there's no middle ground. The defendant's testimony was that, well, as he's falling, I may have put the gun to his head and shot him that way. But based on Dr. Jones' testimony, you have the muzzle impression, which indicates the barrel of the gun was pressed against the skin, back of the scalp, with enough force to leave that impression. You have gunpowder found in the wound. Dr. Jones concludes that was the third shot. So the only reasonable conclusion based on the evidence is that after the first two shots are fired, the victim falls to the ground. Defendant goes over to finish the job, puts the gun to the back of the head, fires that third shot into the victim's head. And the jury can look at all the surrounding circumstances. But it's all of a pace. It's one thing after the next after the next in the heat of the moment. You know, one shot after the next shot after the next shot. Why is it not reasonable to think that if a person is being surprised and ambushed, you know, that then under the rush of adrenaline they say, well, you know, I'm going to finish this off. Dr. Jones' testimony suggests that it wasn't just one, two, three. It was one, two, then he goes over, puts the shot, that final bullet into the victim's head. There you have time to think. You're not acting with some unreasonable belief. The victim is already down on the ground at that point with his pants half down, indicating he was urinating as Dante testified. And then you have the defendant's admission to Dante that he had the gun the entire time. Here's my last point, Mr. Kelleher, because I think time is running out anyway. And your harmless error argument really says that the second degree instruction, had it been given in Anderson, he would have been found guilty of first degree anyway. And had the second degree instruction in Billingsley, Billups, been given, he would have been found guilty of first degree anyway. And so the Supreme Court, I think, has made clear that taking that as a legitimate position, your office, nonetheless, has to acknowledge that the law is that whenever self-defense, whenever the jury is instructed on self-defense, the jury must be instructed on second degree. And, you know, had your office taken that position, Anderson would never have come up. Billingsley, Billups would never have come up. And we'd all be living with a clear line to follow. And that line has now been drawn by the Supreme Court. Well, everyone now knows what the law is, and we know how to proceed in the future. However— You know, Anderson was decided at the trial level by Judge Tuman, someone who thinks very much of the law. And then Judge Gordon, our great deceased justice, decided Anderson. Well, just to sum up, I would submit that when there's no middle ground, such as in Anderson or in Billups, then the finding should be harmless error. And we would easily do that if the Supreme Court had analyzed Anderson under harmless error and said, you know, what we've already talked about. But I don't—the Supreme Court never precluded a finding of harmless error in Anderson. They just didn't give us the green light. It just held that Anderson should have provided the jury with a second degree murder instruction. But it never went to that second step of analyzing Anderson for harmless error. Is Anderson—what is the status of Anderson? Do you know? Well, that case—that's an old case. That case is resolved. It was affirmed. The evidence there supported first degree murder, just as I submit that the evidence here supports first degree murder. But it didn't go. I mean, it's that much older. Leave to appeal was never granted by the Supreme Court. And no supervisory order. And no supervisory order. Anderson was a 94 case. Okay. Most of your time is up. You've had the same amount of time as the opposing counsel. Okay. For all these reasons, as well as those stated in our original brief and our supplemental brief, the people respectfully request that this honorable court affirm the defendant's conviction for first degree murder. Thank you. Actually, five minutes more. Brief rebuttal, counsel. I'll be brief, Your Honors. Thank you. Despite whatever facts the state points to, as the case of O'Neill states, there is no overwhelming evidence of first degree murder in this case, by virtue of the fact that a self-defense instruction was given. The court in Lockett said very clearly, we can conceive of no circumstance when a judge could determine as a matter of law that a jury could find that the defendant had a reasonable subjective belief the killing was justified, but that the jury could not find the defendant's subjective belief was unreasonable. In this case, there's a self-defense instruction, which meant that the trial judge and the state agreed that Billups could have been theoretically found to have a reasonable subjective belief. Therefore, the jury should have also been able to determine whether that subjective belief was unreasonable. Finally, there is conflicting testimony between both the state's witness and the defense witness. The jury was free to accept or reject any portion of either witness's testimony, come to its own conclusions, and as the Washington court said, it is for the jury to weigh the evidence and determine whether that subjective belief existed and whether it was objectively reasonable or unreasonable. So any attempt by the state to say that certain evidence points in one direction doesn't accord with the very clear holding in Washington that it is solely within the province of the jury to make that determination. One quick question. It's a little off point, but when you quoted Lockett regarding the no conceivable circumstances, can you conceive of a case where the defendant would not want a second degree instruction given and would the judge's hands be tied by Washington and tell the defendant, sorry, I'm instructing on second degree, and if the jury wants to compromise between these two diametrically opposed versions of the fact and chooses a point in the middle, that's fine with us? I can't conceive of a case where the defendant would not want one. I believe that in the interest of giving the jury its full spectrum of options to choose from in the light of the evidence presented, the second degree instruction has to be given. Obviously, the defendant is going to argue self-defense, but the jury should have that option. Thank you, counsel. Thank you very much. This matter will be taken under advisement. This Court is adjourned. Thank you, Your Honor.